Lodged Order

FILED
CLERK, U.S. DISTRICT COURT
DEC 20 2010
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**LAW OFFICES OF ABRAHAM R. WAGNER**
Abraham R. Wagner, SBN 86682
1901 Avenue of the Stars, Second Floor
Los Angeles, CA 90067
Telephone: (310) 461-1485
Facsimile: (310) 286-7486
arw@it.org

**WEISS & HUNT**
Thomas J. Weiss, SBN 63167
1925 Century Park East, Suite 2140
Los Angeles, CA 90067
Telephone: (310) 788-0710
Facsimile: (310) 738-0735
tweiss@weisslawla.com

Attorneys for Proposed Intervenor-Defendants,

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LAURA ASHMORE, PAMELYN FERDIN, CAROL GLASSER, AND NICOAL SHEEN,

Plaintiffs

vs.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, UNIVERSITY OF CALIFORNIA-LOS ANGELES CAMPUS POLICE DEPARTMENT, JOHN ADAMS, MARK LITTLESTONE, MATTHEW PINKUS, AND ETHAN SHEAR,

Defendants

Case No: CV10-9050 AHM (AGRx)

[Assigned to Judge A. Howard Matz]

**MOTION FOR INTERVENTION**

**Pursuant to FRCP Rule 24(a) and 24(b)**

[*Filed Concurrently with Declarations of Edythe D. London and J. David Jentsch*]

and

EDYTHE D. LONDON AND J. DAVID JENTSCH

Intervenor-Defendants

Doctors Edythe D. London ("London") and J. David Jentsch ("Jentsch") by counsel, respectfully submit this Motion for Intervention requesting leave to intervene as Defendants pursuant to Federal Rules of Civil Procedure 24(a) and (b).[1] As grounds therefore, London and Jentsch state as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

Plaintiffs Laura Ashmore, Pamelyn Ferdin, Carol Glasser, and Nicoal Sheen in this case have made an *ex parte* application for a temporary restraining order and other injunctive relief as well as monetary damages against the Regents of the State of California, the University of California at Los Angeles (UCLA) Campus Police Department, as well as four individual members of the UCLA Campus Police Department for alleged violations of their Constitutional rights in repeated demonstrations in front of the homes of Intervenor-Defendants London and Jenstch.

Plaintiffs' fundamental contention is that their repeated violation of the Los Angeles Municipal Code restriction on targeted picketing entitles them as a matter

[1] Due to the early stage of this action, a responsive pleading does not accompany this motion as contemplated in Rule 24(c). If this motion is granted, London and Jentsch intend to file a motion to dismiss or answer at the appropriate time.

of Constitutional right to continue such violations and that the UCLA Police should be restrained from enforcement of the law restricting targeted demonstrations with 100' of the residence of a targeted individual. This position lacks both legal and substantive merit, flying in the face of both Supreme Court decisions and common decency. Accordingly, the relief sought should be denied.

Proposed Intervenor-Defendants London and Jentsch are members of the UCLA Medical School faculty engaged in research utilizing animals for approved and required purposes in the course of neuroscience research and medication development related to the treatment of addictive disorders. They have been the targets for regular and repeated demonstrations at their home for over three years by Plaintiffs and others, and have also been the subject of firebombs, car bombs, death threats, and other forms of harassment from self-described animal rights activists.

London and Jentsch seek to enter this lawsuit on the side of Defendants in order to defend their personal and property rights from continued and unlawful assault by animal rights activists. Intervention by London and Jentsch will ensure their interests and the specific targets of these unlawful demonstrations, and that their personal interests in the matter are presented and argued in the record for consideration before this Court.

## II. Background

From 2007 until present self-described animal rights activists have engaged in both criminal and non-criminal activities directed against members of the UCLA Medical School faculty engaged in research utilizing animals such as mice and non-human primates (monkeys).[2] Criminal activities include flooding and

---

[2] At the outset demonstrators at the residence of London identified themselves as members of the Animal Liberation Front (ALF) and Animal Liberation Brigade (ALB) –

firebombing of homes, firebombing of automobiles, and other violations of both state and federal law, including the *Animal Enterprise Terrorism Act*, 18 U.S.C. § 43 (AETA). Plaintiffs and other animal rights demonstrators disclaim any association with these "underground" criminal acts, but otherwise report and encourage them via Internet web sites and elsewhere.

The so-called "home demonstrations" have been held on a regular basis, generally monthly, and are characterized by loud, obnoxious and obscene chanting, distribution of leaflets, and otherwise vulgar activity in front of the homes of London, Jentsch and others associated with UCLA.[3] Demonstrators used amplified sound until advised by the police that this was a violation of the Los Angeles Municipal Code. At times demonstrators have trespassed onto the property of London to distribute leaflets and chant vulgar and obscene slogans. These demonstrations have been monitored by both the Los Angeles Police Department (LAPD) as well as the UCLA Campus Police Department, who have not stopped or interfered with these demonstrations no matter how vulgar, obscene and obnoxious.[4]

Following repeated complaints by London and others that demonstrations within 100' of their private residences violated the Los Angeles Municipal Code

---

organizations identified by the Department of Justice as domestic terrorist organizations. Subsequent to litigation in Los Angeles County Superior Court and the issuance of a permanent restraining order against the ALF, ALB and others "acting in concert" with them these activists have ceased direct identification with the ALF and ALB. Unlawful harassment and criminal activities have expanded to the families of London and others.

[3] The list of targets for these "home demonstrations" also includes medical researchers Dario Ringach, Arthur Rosenbaum (now deceased), Juaquin Fuster, Peter Anton, as well as Dr. Roberto Pecce (UCLA Vice Chancellor for Research).

[4] For well over three years these demonstrations have been recorded on videotape, by both the police and the protestors. The demonstrators regularly post their videos as well as still images of the demonstrations on various Internet web sites.

restriction on targeted picketing, the UCLA Police advised demonstrators on May 15, 2010 that if they violated the 100' limit in front of the residences of UCLA personnel they would be arrested.[5] When demonstrators, including Plaintiffs Ashmore, Glasser and Sheen then engaged in a protest targeting the home of London, in violation of Los Angeles Municipal Code § 56.45(e), UCLA Police officers arrested 12 of them. This protest was organized and directed by Plaintiff Pamelyn Ferdin, who was not arrested, again claiming to be a "legal observer."

Criminal charges against Plaintiffs Ashmore, Glasser and Sheen for violations of LAMC § 56.45(e) were filed by the Los Angeles City Attorney's Office relating to the May 15, 2010 protest on November 19, 2010. Trial on this matter has been set for January 19, 2011 in Los Angeles County Superior Court (Department 81).

## III. Proposed Intervenors

Dr. Edythe D. London is the Thomas and Katherine Pike Professor of Addiction Studies at the UCLA School of Medicine, and Director of the Laboratory of Molecular Neuroimaging.[6] As such she engaged in basic research as well as medication development related to the treatment of various addictive disorders including methamphetamine, tobacco, and other substances. Such research necessarily involves both human and animal studies, in accordance with

---

[5] Prior to the May 15, 2010 demonstration UCLA Police painted marks in the street and sidewalks in front of the London home clearly indicating the 100' limit.

[6] Prior to joining UCLA, Dr: London was employed for over 23 years by the National Institutes of Health (NIH); the National Institute on Drug Abuse (NIDA); and the Johns Hopkins University School of Medicine. As the author of several books and over 450 published scientific papers, she is regarded as a leading national authority in the area of drug addiction and substance abuse.

both established scientific procedures as well as federal statute. (Exhibit A – Decl. London)

Dr. J. David Jentsch is a Professor of Psychology at UCLA as well as a Professor of Psychiatry at the UCLA School of Medicine. For several years he has been a collaborator of Dr. London's, and also engaged in basic research as well as medication development related to the treatment of various addictive disorders including methamphetamine, tobacco, and others. His research has also involved studies utilizing non-human primates. (Exhibit B – Decl. Jentsch)

## IV. Drs. London and Jentsch are Entitled to Intervene as a Matter of Right

Federal Rule of Civil Procedure 24(a)(2) provides that:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit has stated the test for intervention of right as follows: (1) the intervention must be timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject matter of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). This intervention test is to be "broadly construed in favor of applicants for intervention." *United States ex rel.McGough v. Covington Technologies Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).

//

**A. Intervention is timely**

Plaintiffs filed their Complaint and *ex parte* application for a temporary restraining order on November 24, 2010. This Court dismissed without prejudice Plaintiffs initial filing for various deficiencies and lack of any proposed order. Plaintiffs re-filed their *ex parte* application for a temporary restraining order on November 30, 2010 along with a proposed order, which was initially denied by this Court. This Court ordered counsel for all parties to appear on December 6, 2010 and asked for additional submissions by the parties. Counsel for Defendants has not yet provided London and Jentsch with specific information as to what has been requested by this Court, even though their rights and property are most directly affected.

This motion is submitted shortly after the revised *ex parte* application and motion were filed, and prior to when Defendants response is presumably due. *See Prete*, 438 F.3d at 954; and *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (a filing for intervention that occurs before the case is truly at issue is considered timely).

**B. Drs. London and Jentsch Have a Direct and Protectable Interest**

Without question Drs. London and Jentsch have a direct and protectable interest in the outcome of this case. To argue otherwise is simply absurd, and there is no statute or case law to support a contrary position. They have been the targets of regular, repeated obnoxious and obscene demonstrations by Plaintiffs in this case and other animal rights extremists associated with Plaintiffs for well over three years. Indeed, this has been documented by Plaintiffs themselves in this case (Plaintiffs Exhibit "A") as well as on various Internet web sites and postings made by Plaintiffs and their associates to publicize their activities.

As the principal targets of these repeated demonstrations by Plaintiffs and other animal rights extremists associated with Plaintiffs in this case, Drs. London and Jentsch have a fundamental right to defend their personal privacy and homes from repeated invasions that are prohibited by statute. It is because Drs. London and Jentsch have been repeatedly and illegally targeted by these animal rights extremists that it is necessary for them to appear in this action.

**C. The Disposition in This Case Will Directly Affect Drs. London and Jentsch**

An unfavorable disposition in this action will directly affect Drs. London and Jentsch, as the principal targets of these repeated demonstrations by Plaintiffs and others associated with Plaintiffs in this case and other animal rights extremists associated with Plaintiffs. An order by this Court which restrains the police from enforcing a valid statute, specifically Los Angeles Municipal Code § 56.45(e), and permits Plaintiffs and others to violate this statute at will, again coming within the 100' limit for targeted demonstrations, renders the protection afforded by this statute ineffective and violates fundamental privacy and property rights guaranteed by federal law. (See *Frisby v. Schultz*, 487 U.S. 474 (1988)).

**D. Adequacy of Representation**

The burden under this prong has been described as "minimal," as a party seeking to intervene needs to show only that representation of his or her interest "may be inadequate." *Natural Resources Defense Council*, 578 F.2d at 1345; *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972). As the Sixth Circuit has held:

> [T]he applicant [for intervention] should be treated as the best judge of whether the existing parties adequately represent his or her interests, and that any doubt regarding adequacy of representation

should be resolved in favor or the proposed intervenors. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 482 (6th Cir. 2000).

In this case, Drs. London and Jentsch are concerned that Defendants may not adequately represent their interests, as the principal targets of these repeated demonstrations by Plaintiffs and others associated with Plaintiffs in this case and other animal rights extremists associated with Plaintiffs. At a minimum, Defendants actions to date raise questions as to whether the law will be defended consistent with the Constitution and federal case law, or will Defendants simply try to defer the Constitutional issues raised by Plaintiffs to the Los Angeles County Superior Court in a pending action with respect to three of the four Plaintiffs in this case under a dubious application of the *Younger* abstention doctrine. (See *Younger v. Harris*, 401 U.S. 37, 44-45 (1971))

Defendants have also mentioned *passim* their belief that the Regents are immune in this case under the 11th Amendment, but have not yet articulated this position or supported it with any points or authorities.

Moreover, Drs. London and Jentsch note that the Defendants likely legal defense in this matter does not address certain aspects of the law that they view as critical. Plaintiffs in this case allege that their rights of free speech guaranteed under the 1st and 14th Amendments have somehow been violated by the UCLA Police in their lawful application of the Los Angeles Municipal Code § 56.45(e) ("LAMC"), and that for reasons that are not entirely clear these Constitutional protections somehow enable them to violate the 100' limit established by the LAMC for targeted demonstrations so that their loud, obnoxious and often obscene shouting can have an "impact" on the intended targets of the demonstrations. As the principal targets of these repeated demonstrations by Plaintiffs, they are entitled to assist the defense of their personal privacy and homes.

## V. Permissive Intervention Should Be Granted.

Fed. R. Civ. P. 24(b)(1) governs permissive intervention and provides:

> On timely motion, the Court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

This test is clearly met here. As described *supra*, Drs. London and Jentsch, as the principal targets of the "home demonstrations" of extremists and animal rights activists for well over three years, have a defense to the main action that shares both common questions of law and fact, albeit with a different perspective as described above. The Court will need to examine the same law and the same facts to adjudicate these claims.

Rule 24(b)(3) requires the Court to consider whether permissive intervention would cause undue delay or prejudice the adjudication of the rights of the existing parties. In this instance, as described above, there will be neither prejudice nor delay. Drs. London and Jentsch intend to comply with any schedule already in place in this matter, and as additional Defendants will not affect the scheduling of this case in any way. Thus, at a minimum, Drs. London and Jentsch should be granted permissive intervention.

## VI. Conclusion

For the forgoing reasons, Drs. London and Jentsch respectfully request that this Court grant leave to Drs. London and Jentsch to intervene as Defendants in this action.

//

//

//

Respectfully Submitted,

LAW OFFICES OF ABRAHAM R. WAGNER

WEISS & HUNT

By: *s/ Abraham R. Wagner*
Abraham R. Wagner

Attorneys for Intervenor-Defendants
Edythe D. London and J. David Jentsch

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2010, I electronically filed the foregoing Motion to intervene (with exhibits) and transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal by Notice of Electronic Filing to the following persons:

John J. Uribe
uribelaw@hotmail.com
*Attorney for Plaintiffs*

Eugene P. Ramirez
epr@mmker.com
*Attorney for Defendants*

Patrick L. Hurley
plh@mmker.com
*Attorney for Defendants*

In addition a CHAMBERS COPY was delivered this day to:
U.S. District Court
Chambers of Judge A. Howard Matz
312 North Spring Street, Room 170
Los Angeles, CA 90012

By: *s/ Susan Vercellino*